AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| KENYARI DEVAUGHNTE BREWTON | ) Case No. |
| | ) 5:21-mj-1161-PRL |
| | ) |
| | ) |
| | ) |

**SEALED**

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 3, 2020 - April 26, 2021___ in the county of ___Marion___ in the

___Middle___ District of ___Florida___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Sec. 924(a)(1)(A) | Knowingly causing an FFL to maintain false information in its offical records (8 counts) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

SSA Shawn Newsom, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8|4|21 @ 2pm

*Judge's signature*

City and state:             Ocala, Florida

Philip R. Lammens, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA                    MDFL CASE NO. 5:21-mj-1161-PRL

COUNTY OF MARION

### AFFIDAVIT OF SENIOR SPECIAL AGENT SHAWN NEWSOM IN SUPPORT OF A CRIMINAL COMPLAINT

I, Shawn Newsom, being duly sworn, do hereby depose and state the following:

### INTRODUCTION

1.      I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed for more than twenty years.  I have conducted numerous federal investigations involving federal firearms and narcotics violations.  I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy.

2.      As a result of my training and experience as an ATF Special Agent, I am familiar with the felony offense of causing a Federal Firearm Licensee (FFL) to maintain false information in its official records, in violation of 18 U.S.C. § 924(a)(1)(A).  The statute makes it a felony to knowingly making any false statement or representation with respect to the information required to be kept in the records of a person licensed under the provisions of Chapter 44.  *See* 18 U.S.C. § 924(a)(1)(A).

### PURPOSE OF THE AFFIDAVIT

3.      I submit this affidavit in support of a criminal complaint charging the defendant, KENYARI DEVAUGHNTE BREWTON (BREWTON), with the

federal criminal offense listed above. I have worked with the Ocala Police

Department (OPD) and Marion County Sheriff's Office (MCSO) in the criminal

investigation of BREWTON, as described in this affidavit. From my participation

in the investigation, I have obtained the information set forth in this affidavit. As the

affidavit is intended only to show that there is probable cause for the arrest of

BREWTON, it does not contain all my knowledge about this investigation.

PROBABLE CAUSE

*FFLs and the ATF Form 4473*

4.      At all times relevant to this criminal complaint, Classic Gun and Pawn

(Classic) was an FFL licensed by ATF to engage in the business of buying and selling

firearms. Classic is located in Ocala, Marion County, Florida, within the Middle

District of Florida.

5.      As part of any firearms sale, an FFL (like Classic) is required to have

the purchaser complete an ATF Form 4473 (Firearm Transaction Record). Two

versions of this form are relevant to this case—one revised in October 2016 and

another revised in May 2020. The top of the Form 4473 also contains the following

warning, printed in bold type, which reads in relevant part:

> **WARNING: The information you provide will be used
> to determine whether you are prohibited from receiving
> a firearm. Certain violations of the Gun Control Act, 18
> U.S.C. 921 et. seq., are punishable by up to 10 years
> imprisonment and/or up to $250,000 fine.**

2

6.     Section A of the October 2016 version of the Form 4473 asks the purchaser a series of questions to determine whether the purchaser is prohibited from possessing or receiving firearms under federal law. In the same section, the purchaser also must provide basic background information on the Form 4473 identifying him/her as the individual making the purchase (name, date of birth, residence address, place of birth, race, sex, social security number, etc.). Section B of the revised May 2020 Form 4473 asks these same questions.

7.     Question 11.a. on the October 2016 version of the Form 4473, as well as the question 21.a. on the revised May 2020 version, asks the following: "Are you the actual transferee/buyer of the firearms(s) listed on this form?" This question is then followed by another warning, also printed in bold type, which reads:

> **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**

8.     Definitions included on the Form 4473 further detail the meaning of "actual transferee/buyer" as follows:

> For purposes of this form, a person is the actual transferee/buyer *if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself*. (e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.

3

(emphasis supplied).

     9.     The transferee/buyer is required sign the completed form below a

certification, also printed in bold type, that all the information provided by the

transferee/buyer on the Form 4473 (including the answer to question 11.a. or 21.a.,

depending on the version of the form) is "true, correct and complete." In relevant

part, this certification reads:

> **I certify that my answers . . . are true, correct, and**
> **complete. I have read and understand the Notes,**
> **Instructions, and Definitions on ATF Form 4473. I**
> **understand that answering "yes" to question [11.a. [on**
> **the October 2016 version; 21.a. on the May 2020**
> **version] if I am not the actual transferee/buyer is a**
> **crime punishable as a felony under Federal law, and may**
> **also violate State and/or local law . . . I also understand**
> **that making any false or written statement . . . is a crime**
> **punishable as a felony under Federal law, and may also**
> **violate State and/or local law. I further understand that**
> **the repetitive purchase of firearms for the purpose of**
> **resale for livelihood and profit without a Federal**
> **firearms license is a violation of Federal law.**

## *Traffic Stop*

     10.     On or about June 17, 2021, OPD Officer Anastasio Hajoglou observed

a silver 2021 Nissan Rouge (Florida license plate JAS4199) stopped at the red light at

NW 28th Street and N. Pine Avenue, Ocala. The driver-side window was down and

Officer Hajoglou could see the driver of the vehicle, M.R., was not wearing a

seatbelt. Accordingly, Officer Hajoglou conducted a traffic stop of the Rogue to

investigate the traffic infraction.

4

11.     Upon stopping the Rogue, Officer Hajoglou made contact with the driver, M.R., and three other occupants—K.P., D.B., and D.M. Officer Hajoglou also smelled the odor of marijuana coming from inside the Rogue. D.M. stated he had a medical marijuana card and had last been dispensed approximately 2.5 games of medical marijuana on May 17, 2021. Officer Hajoglou noted, however, that the smell of the marijuana coming from the Rogue was too strong for the quantity described by D.M.

12.     Based on the odor of marijuana, Officer Hajoglou informed the occupants that the Rogue would be searched. Once all four occupants were removed, the officer located a black plastic Glock handgun box on the front passenger floorboard where D.B. had been seated. The handgun box was consistent with one created by the manufacturer of the firearm for shipping and retail sale. It included Glock markings as well as stickers associated with a specific firearm—a Glock, model 23, generation 5 pistol with the unique serial number BSLY144.



*The Glock pistol box with firearm identifiers.*

13.    As the search continued, Officer Hajoglou found a matching .40 caliber

Glock pistol under the driver's seat. The manufacturer markings on the firearm were

identical to the information on the Glock factory box.



*The matching Glock pistol.*

14.    Officers located approximately 26 grams of marijuana in the center console of the Rogue. They also found a grinder and a rolling tray between the rear passenger seats.

15.    Officer Hajoglou observed another firearm—an AK-47 style pistol— inside the Rogue. This second firearm—a Romarm/Cugir, model Micro Draco, 7.62x39 caliber pistol, serial number PMD-17309-19—was located on the rear floorboard between the passenger seats. There was a loaded magazine positioned next to it containing 7.62x39 caliber ammunition.



*The Romarm/Cugir AK-47 style pistol.*

16.     Following the discovery of the drugs, paraphernalia, and firearms, all four occupants were read their constitutional rights. Each of the occupants waived his rights and agreed to speak with OPD Detective Brandon Sirolli. D.B. claimed ownership of the Glock pistol, which he said he had purchased for self-defense.  D.B. then clarified that he had not actually bought the firearm himself—he was under 21 years of age and could not legally have purchased the handgun.[1] D.B. declined, however, to provide the name of the person who had purchased the pistol and provided it to him.

17.     Following the recovery of these two firearms, OPD test-fired them and submitted the .40 caliber and 7.62x39 caliber shell casings/projectiles for comparison in the National Integrated Ballistic Information Network (NIBIN), an automated

---

[1] *See* Fla. Stat. § 790.065(13).

8

database that automatically compares unique ballistics data gathered from across the country.

*A Related Shooting*

18.     On or about May 2, 2021, the MCSO responded to a homicide which had occurred at the Pilot gas station, 2020 SW Highway 484, Ocala, Florida. Upon arriving on scene, deputies determined that the deceased victim had been shot. Eyewitnesses to the shooting described seeing D.B. (one of the passengers from the OPD traffic stop on June 17, 2021) and another individual (S.K.) shooting a firearm during the incident. MCSO recovered .40 caliber shell casings at the scene. These shell casings subsequently were submitted to the Florida Department of Law Enforcement (FDLE) for forensic analysis.

19.     On or about July 12, 2021, FDLE completed its examination of the recovered shell casings. Using NIBIN data, the laboratory determined that the .40 caliber shell casings from the May 2021 MCSO homicide investigation matched the sample shell casings from the Glock pistol submitted by OPD following the traffic stop on or about June 17, 2021. In other words, the unique markings made on a round of ammunition by the recovered .40 caliber Glock pistol matched the distinctive markings on the shell casings from the MCSO homicide. The Glock pistol, therefore, had been at the scene of the shooting on or about May 2, 2021.

*Tracing the Recovered Firearms*

20.     Using the unique manufacturer markings, the recovered Glock and Romarm/Cugir pistols were traced by the ATF National Tracing Center.  The

9

Tracing Center compares the information from recovered firearms to the transaction information recorded on the Form 4473s maintained by FFLs. In this instance, the Tracing Center determined that the Glock pistol had been purchased by BREWTON from Classic on or about April 26, 2021—approximately six days before the homicide where D.B. had been seen shooting a firearm. Similarly, the Romarm/Cugir pistol had been purchased by BREWTON from Classic on or about March 2, 2020.

<u>Investigation at Classic</u>

21.    On or about July 20, 2021, OPD Detective Sean Young and I went to Classic to obtain a list of firearms that BREWTON had purchased from the business. Employees at Classic furnished SA Newsom with a customer sales history which showed that BREWTON had purchased approximately seventeen firearms from the business since 2017. The list included the make, model, and caliber of these firearms, though it did not provide the serial numbers.

22.    Among other things, the list reflected BREWTON's repeated purchases of identical/very similar firearms over a very short period of time. For instance, BREWTON separately purchased three nearly identical Century Arms 7.62x39 caliber, AK-47 style pistols from on or about February 27 – March 25, 2020.[2] This behavior is consistent with firearms trafficking, as gun owners/collectors do not typically buy multiple copies of identical firearms in rapid succession. Rather, such

---

[2] These pistols are also AK-47 variants, similar to the Romarm/Cugir, model Micro Draco, 7.62x39 caliber pistol recovered by OPD on or about June 17, 2021.

10

behavior typically reflects an intention to immediately resell the firearms for profit. The person repeatedly purchasing such firearms cannot be the "actual transferee/buyer" on the Form 4473 since he/she is merely purchasing the firearms for immediate resale.

*Interview of BREWTON*

23.     On or about July 22, 2021, Detective Young and I interviewed BREWTON at his place of employment—the Alachua County Jail, 333 NW 39th Avenue, Gainesville, Florida. BREWTON works at that facility as a Detention Deputy. He was on-duty at the time of the interview. The video-recorded interview was done with the assistance of the Alachua County Sheriff's Office (ACSO), Office of Professional Standards.

24.     At the outset, BREWTON was read his constitutional rights, which he freely and voluntarily waived. He also signed an ATF Advice of Rights and Waiver form.

25.     BREWTON was shown the list of approximately seventeen firearms he had purchased from Classic, including the two firearms recovered at the OPD traffic stop on or about June 17, 2021. BREWTON stated he had sold a Glock model 23 pistol to D.M. at the beginning of May 2021. When we explained that the Glock pistol had been recovered in possession of another passenger, D.B., BREWTON admitted knowing D.B. as well. BREWTON insisted, however, that he had not sold the Glock pistol to D.B.—he had sold it to D.M. He further acknowledged his

11

friendship with the family of S.K., the second person observed with D.B. at the
location of the MCSO homicide.

26.     During the interview, we asked BREWTON to review the list of
firearms from Classic. We also asked him to describe what had happened to each of
these firearms following the purchase. BREWTON provided the following
explanations:

- **Masterpiece Arms, model MPA930T, 9mm caliber pistol, purchased on or about March 2, 2017**: BREWTON claimed he had paid $500 for the firearm but did not like it. He enjoys shooting as a hobby and wanted to open a firearms safety business, so he posted videos of him shooting on Snapchat. An unknown black male then messaged him asking to purchase the firearm. He did not remember the person's information, other than the person said he was not a felon. The same person also purchased a Zastava AK pistol MP92PV (see below) from BREWTON. BREWTON stated that he received $1,200 dollars for the sale of both firearms.

- **Zastava, model MP92PV, 7.62x39 caliber, AK-47 style pistol, purchased on or about April 20, 2017**: BREWTON claimed he had paid approximately $700 for the firearm. This firearm was sold with the Masterpiece Arms pistol (above) to the unknown male.

- **Glock, model 23, Generation 3, .40 caliber pistol, purchased on or about May 31, 2017**: BREWTON stated that he was still in possession of this firearm.

- **Taurus, model PT-111 G2, 9mm caliber pistol, purchased on or about July 17, 2017**: BREWTON stated that he was still in possession of this firearm.

12

- **Taurus, model PT-111 G2, 9mm caliber pistol, purchased on or about August 18, 2017**: BREWTON stated that this firearm was gifted to his mother, T.R.

- **Ruger, model 9E, 9mm caliber pistol, purchased on or about September 21, 2017**: BREWTON stated that he is still in possession of this firearm.

- **Glock, model 21, .45 caliber pistol, purchased on or about November 29, 2017**: BREWTON stated that this firearm was sold to a co-worker at the Florida Department of Corrections when he was employed at the Marion Correctional Institution. He claimed he had paid approximately $600 for the pistol but sold it for around $500. He could not recall to whom he had sold it.

- **Century Arms, model Mini Draco, 7.62x39 caliber, AK-47 style pistol, purchased or about February 3, 2020**: BREWTON stated he had purchased this firearm for $700 and later sold it for approximately $700 to an unknown black male at an unknown location.

- **Century Arms, model Mini Draco, 7.62x39 caliber, AK-47 style pistol, purchased on or about February 27, 2020**: This is one of the pistols seized on June 17, 2021 by OPD. BREWTON stated he had paid approximately $700 for this firearm, then sold it to D.M. for $850 along with a Glock 19X 9mm pistol, and a Glock 23 .40 caliber pistol.  Brewton claimed that D.M. was supposed to pay him $1,850 for all three firearms and that D.M. currently was making payments.

- **Century Arms, model Micro Draco, 7.62x39 caliber, AK-47 style pistol, purchased on or about March 2, 2020**: BREWTON claimed to have paid approximately $700 for the pistol, then sold it for approximately $900 to an unknown black male at an unknown location. This sale occurred through "word of mouth" that BREWTON was selling firearms.

13

- **Pioneer Arms, model Hell Pup, 7.62x39 caliber, Ak-47 style pistol, purchased on or about March 23, 2020**: BREWTON stated he had paid approximately $700 for this firearm then sold it to an unknown black male for $900 at an unknown apartment in the 4600 block of NW Old Gainesville Rd in Ocala.

- **Century Arms, model VSKA, 7.62x39 caliber, AK-47 style rifle, purchased on or about August 26, 2020**: BREWTON claimed to have paid $900 for this firearm. He claimed to have sold it to another unknown black male at an unknown location. BREWTON claimed this sale was also by "word of mouth."

- **Glock, model 19, Generation 5, 9mm caliber pistol, purchased on or about September 14, 2020**: BREWTON stated he was still in possession of the firearm.

- **Glock, model 19x, 9mm caliber pistol, purchased on or about April 3, 2021**: BREWTON stated this firearm was his everyday carry weapon and it was secured in his vehicle in the ACSO jail parking lot.

- **Glock, model 23, .40 caliber pistol, purchased on or about April 26, 2021**: This is one of the pistols seized on June 17, 2021 by OPD. Brewton claimed to have sold this firearm to D.M. in the beginning of May 2021 along with a tan Glock model 19x 9mm pistol and the Mini Draco 7.62x39 caliber pistol for $1,850.

- **Glock, model 19x, 9mm pistol, purchased on or about April 26, 2021**: BREWTON claimed that he sold this firearm to D.M.

- **Smith and Wesson, model SD9VE, 9mm pistol, purchased on or about July 14, 2021**: Brewton claimed that he was still in possession of this firearm.

27.    Regarding his repeated purchases of AK-47 style pistols, BREWTON

stated he had "sold all of them and got caught up in people asking." BREWTON

added that he "be selling guns and don't be knowing [people] like that, just to be

14

profit." BREWTON stated he would purchase these types of firearms and then resell them within a month. He typically would make a profit of approximately $150 to $200 per AK-47 pistol in these transactions.

28.     Regarding his acquisition of Glock pistols, BREWTON recalled purchasing the Glock, model 23, .40 caliber pistol (seized by OPD in June 2021), and the Glock, model 19x, 9mm pistol. Both purchases had occurred at Classic on April 26, 2021. Brewton admitted that he had then sold these two pistols to D.M. within a few days (around the beginning of May 2021). Brewton also described his purchase of another Glock, Model 21, pistol for $450 through a private sale. He explained that he had purchased this firearm purely for "profit" because he knew he could resell it and make between $100 to $150.

*ATF Form 4473s*

29.     On or about July 28, 2021, Detective Young and I obtained the Form 4473s from BREWTON's purchases of firearms at Classic. I then focused my investigation on specific firearms that BREWTON had admitted to purchasing and reselling for a profit, specifically Glock and AK-47 style firearms. These firearms consisted of:

- the Glock, model 23, .40 caliber pistol, purchased on or about April 26, 2021;

- the Glock, model 19x, 9mm pistol, purchased on or about April 26, 2021;

- the Zastava, model MP92PV, 7.62x39 caliber, AK-47 style pistol, purchased on or about April 20, 2017;

15

- the Century Arms, model Mini Draco, 7.62x39 caliber, AK-47 style pistol, purchased on or about February 3, 2020;

- the Century Arms, model Mini Draco, 7.62x39 caliber, AK-47 style pistol, purchased on or about February 27, 2020;

- the Century Arms, model Micro Draco, 7.62x39 caliber, AK-47 style pistol, purchased on or about March 2, 2020;

- the Pioneer Arms, model Hell Pup, 7.62x39 caliber, AK-47 style pistol, purchased on or about March 23, 2020; and,

- the Century Arms, model VSKA, 7.62x39 caliber, AK-47 style rifle, purchased on or about August 26, 2020.

30.    In each instance, BREWTON had completed the Form 4473 at Classic with his biographical information. Depending on the version of the form, he marked "yes" on each next to the specific question indicating that he was the "actual transferee/buyer" for each firearm (even though he planned to resell them). Finally, he signed his name below the certification indicating that his answers were "true, correct and complete." In doing so, BREWTON caused Classic, an FFL, to maintain false information in the records it is required to maintain under federal law, namely the Form 4473s.

## CONCLUSION

31.     Based on the foregoing, I respectfully submit that there is probable

cause to believe that BREWTON has committed eight counts of the crime of causing

an FFL to maintain false information in their official records, in violation of 18

U.S.C. § 924(a)(1)(A).

This concludes my affidavit.

Shawn Newsom
Senior Special Agent, ATF

Sworn to and subscribed before me this 4ᵗʰ day of August, 2021.

Philip R. Lammens
United States Magistrate Judge

17